UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                        CASE NO.

      Plaintiff,

vs.

KILWIN'S CHOCOLATES FRANCHISE, INC.
a Foreign for Profit Corporation

      Defendant,
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, KILWIN'S CHOCOLATES FRANCHISE, INC. a foreign corporation d/b/a KILWIN'S (hereinafter referred to as "KILWIN'S"), for declaratory and injunctive relief, and damages, and alleges as follows:

1) This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2) This action is also brought pursuant to 28 C.F.R. Part 36.

3) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5) Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, KILWIN'S is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7) Defendant, KILWIN'S is a company that sells chocolates, sweets and other desserts. There is a retail location in Miami-Dade County.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase chocolate fudge, truffles and other items.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16) Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing their environment. As such, Plaintiff is a member of a protected class

under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17) Plaintiff regularly uses the computer, but he needs the assistance of special software for visually impaired persons. The software that he uses is screen reader software that is readily available commercially.

18) Defendant is a private entity which owns and operates retail locations. The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19) Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores. The public is able to, among other things, view the products available at defendant's locations, buy chocolate, sweets and desserts through defendant's website, subscribe to Defendant's "My Kilwins" Club, create an account and register to track orders, and learn the story behind Defendant's brand.

20) Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA. The website cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing chocolate fudge through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to his home is important to his as an alternative when he is not able to visit the Defendant's stores.

23) The website also services Defendant's physical stores by providing information on its brand, sales campaigns, and other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to view the products available at defendant's locations, buy chocolate, sweets and desserts through defendant's website, subscribe to Defendant's "My Kilwins" Club, create an account and register to track orders, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores. By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, advertising campaigns, the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26) At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.kilwins.com/ Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible

service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27) Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's "My Kilwin's Club" and create an account through the website and at Defendant's physical stores.

28) The opportunity to shop Defendant's merchandise from his home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29) Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30) During the months of April and May, 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate himself as to the merchandise and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase chocolate on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, buy chocolate and desserts through defendant's website, subscribe to Defendant's "My Kilwins" Club, create an account and register to track orders, and learn the story behind Defendant's brand.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

**Violations that prevent users from completing desired action**

- **Violation**: Functionality of the content is not operable through a keyboard interface.

    Note/Proof: The site becomes unresponsive repeatedly when trying to navigate it using the keyboard

<u>Applicable WCAG 2.1 Standard at Issue</u>: *Standard 2.1.1 Keyboard (Level A).*

<u>Nature of the Violation</u>: required by WCAG 2.1's *Standard 2.1.1 Keyboard.*

38) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who he can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent his in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the https://www.kilwins.com/website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's website is not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

**Violations that prevent users from completing desired action**

- **Violation**: Functionality of the content is not operable through a keyboard interface.

    Note/Proof: The site becomes unresponsive repeatedly when trying to navigate it using the keyboard

    Applicable WCAG 2.1 Standard at Issue: *Standard 2.1.1 Keyboard (Level A)*.

    Nature of the Violation: required by WCAG 2.1's *Standard 2.1.1 Keyboard*.

51) Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since he has been denied full access to Defendant's website.

52)     As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.      A declaration that Defendant's website is in violation of the ADA;

B.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.An award to Plaintiff of his reasonable attorney's fees costs and expenses pursuant to 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.


[1]

## COUNT II – TRESPASS

53) Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54) Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55) Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

56) Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

57) Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

58) On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

*Privacy Policy*

*This Policy*

*At Kilwin's Chocolates Franchise, Inc. ("KCF"), your privacy is important to us, which is why we have developed this online privacy policy (this "Policy"). This Policy explains how KCF and its affiliates ("we," "us," and "our") protect your privacy when you use the websites that display this Policy (our "Site(s)").*

*Scope of this Policy*

*This Policy applies only to the personal information collected through our Site, including the following Sites:*

- *http://www.kilwins.com*
- *http://www.kilwinsfranchise.com*

*This Policy is part of and incorporated into the Terms of Use published on our Site.*

*To review our Terms of Use, click on the link marked "Terms of Use" at the bottom of each page of our Site.*

*Effective Date of This Policy*

*This Policy is effective as of June 23, 2011.*

*Questions About This Policy*

*If you have any questions regarding this Policy or our privacy practices:*

- *Send an e-mail to webmaster@kilwinsfranchise.com and write "Privacy Policy" in the subject line;*
- *Write to us at: 1050 Bay View Road, Petoskey, Michigan 49770-9006; or*
- *Call (231) 758-3901.*

*Your Consent to This Policy*

*By using one of our Site, you are agreeing to the collection, use and disclosure of your personal information as described in this Policy. If you do not consent to the collection, use and disclosure of your personal information as described in this Policy, you may not use our Site.*

*What is "personal information"?*

*As used in this Policy, the term "personal information" means information that identifies you personally, either alone or in combination with other information available to us.*

*Privacy Notices*

*This Policy may be supplemented or amended from time to time by "Privacy Notices" posted on the pages on which we collect your personal information. Generally, Privacy Notices provide details about the personal information we collect on those pages, why we need that information, and choices you may have about the ways we use that information.*

*Click-Through Agreements*

*We may supplement or amend this Policy by the terms of a "click-through" agreement between you and us. For example, when you register to use a password-protected area of a Site, you may be asked to agree to special terms governing your use of that area of the Site. In such cases, you will be asked to expressly consent to the special terms, for example,*

*by checking a box or clicking a button marked "I agree." If the terms of the "click-through" agreement are different than the terms of this Policy, the terms of the "click-through" agreement will supplement or amend this Policy, but only with respect to the matters governed by the "click-through" agreement.*

*This Policy May Change*

*We reserve the right to update or modify this Policy, at any time and without prior notice, by posting the revised version of the Policy on our Site. The changes will only apply to the personal information we collect after we have posted the revised Policy on our Site. Your use of any one of our Site following any such change constitutes your agreement that all personal information collected from or about you through our Site after the revised Policy is posted will be subject to the terms of the revised Policy. To alert you to changes in this Policy, we will provide a notice at the top of this page for at least 30 days after the new effective date. Unless the change is a minor change (such as a change in our contact information or in our list of Site) or a non-substantive change (such as the reformatting of our Policy), we will also post notices on our home pages and/or on the relevant pages of our Site for 30 days after the new effective date to alert you to the change. You may access the current version of this Policy at any time by clicking on the link marked "Privacy Policy" at the bottom of each page of our Site.*

*What Personal Information Do We Collect on Our Site and How Do We Use It?*

*There are several ways that we may collect personal information on our Site:*

*Information You Provide. We collect the personal information you knowingly and voluntarily provide (about yourself and others) when you use one of our Site, for example, the information you provide when you register or update your member profile, purchase a gift or gift card, place an on-line order, submit a resume, or ask to be added to our mailing list. We use the personal information you volunteer through our Site to provide the information, products and services you request, to personalize your experience on our Site, to provide customer service, and for any other purpose we identify in a specific Privacy Notice.*

*We do not add your personal information to our mailing list unless you request to be placed on our mailing list. In some parts of our Site, you can submit information about other people. For example, if you order a gift or gift card or certificate online and want it sent directly to the recipient, you must submit the recipient's name and address. We use this information to send your gift to the recipient. We also store this information so that you do not have to reenter it the next time you send a gift to the same recipient. We do not use this information to add the recipient to our mailing lists. In the future, you may be able to send a message to a friend by entering your friend's name and e-mail address. We use the information you provide to personalize and send the message to your friend. We do not use this information to add your friend's name to our mailing lists.*

*We may include in our Site "Career Opportunity" areas where you can search for open positions and apply for a job with us. If we do so, then when you submit an employment application, we ask you to provide certain personal information, including, but not limited to, your name, address, telephone number, e-mail address, social security number, driver's license number, and employment history. If you send us an e-mail to inquire about a*

*position, the information we receive is the information you include in your cover letter, resume and e-mail message (we will also automatically receive your e-mail address). Please note that by submitting your information regarding employment opportunities to us, you authorize us to transmit and store your information in our recruitment database, to circulate that information as necessary for the purpose of evaluating your qualifications for job vacancies at KCF and/or its subsidiaries, and to contact you about a possible employment opportunity. If you are hired by KCF or one of its subsidiaries, the information you provide during the recruiting process will become part of our employee records.*

*Information Provided by Others. From time to time, we may supplement the information you give us with information from third parties, including our franchisees and data brokers. For example, we may supplement your profile with demographic and preference information that is supplied to us for each zip code in our database. By supplementing your profile, we are better able to provide product recommendations and special offers that will be of genuine interest to you. We may also use this additional information to further personalize our Site and improve your experience while you are on our Site.*

*Information Sent to Us by Your Web Browser. We collect information that is sent to us automatically by your Web browser. This information typically includes the IP address of your Internet service provider, the name and version of your operating system, the name and version of your browser, the date and time of your visit, and the pages you visit. The information we receive depends on the settings on your browser. Please check your browser if you want to learn what information your browser sends or how to change your settings. Generally, we use this information to create statistics that help us improve our sites and make them more compatible with the technology used by our visitors.*

*The information provided by your browser should not identify you personally. However, we may review our server logs for security purposes, such as detecting intrusions into our network. If we suspect criminal activity, we might share our server logs – which contain visitors' IP addresses – with the appropriate investigative authorities who could use that information to trace and identify individuals. In addition, if you access this site through an e-mail we have sent you, or if you've created a "user identity" during one of your visits, we may link the information provided by your browser to information in our records that identifies you personally.*
*With Whom Do We Share Personal Information?*
*Our Affiliates. The KCF family of businesses consists of KCF and its affiliate, Kilwins Quality Confections, Inc. ("KQC"). We share personal information within the KCF family of businesses for use in accordance with the Policy. For example, if you apply for a job at KCF, we may share your resume with our subsidiaries for the purpose of evaluating your qualifications for job vacancies and to contact you about a possible employment opportunity with one of our subsidiaries. If you order products from us, we may share it with KQC for the purpose of fulfilling your order.*

*Service Providers, In General. We share personal information collected through our Site with companies and organizations that perform services on our behalf, for example,*

*companies that provide support services to us (such as credit card processing services, data storage services, and web hosting services) or that help us market our products and services (such as third-party e-mail marketing companies). These third parties are required by contract to use the personal information we share with them only to perform services on our behalf and to treat your personal information as strictly confidential.*

*Franchisees. Many of our stores are owned and operated by our franchisees. We do not currently share the information we collect through this Site with our franchisees, except to provide the products, services or information you request, or to respond to a question or concern about service or products at one of our stores. As just one example, if you place an order at www.kilwins.com, we will share the information needed to fill your order and provide customer service to you with the appropriate store location.*

*Joint Promotions. We sometimes offer content (for example, products or promotions) that is sponsored by or co-branded with third parties. By virtue of these relationships, these third parties may obtain the personal information that you submit when you participate in the activity. We will post a Privacy Notice on the pages on which you provide personal information, providing details such as the identity of the third party and the choices you may have. In some cases, we may link to the third party's privacy policy so that you will know what privacy promises the third party has made.*

*Business Transfers. Information submitted to our Site will become part of our normal business records. Your personal information may be transferred to another company (either an affiliate or an unrelated third party) that has acquired the stock or assets of KCF, one of our affiliates, or one of our operating divisions, for example, as the result of a sale, merger, reorganization, or liquidation. If such a transfer occurs, the acquiring company's use of your personal information will still be subject to this Policy and the privacy preferences you've expressed to us. In other words, the acquiring company will "step into our shoes" and use your personal information only as we would have been permitted to do under this Policy.*

*Protection of Our Site and Others. We may disclose personal information you provide through our Site when we, in good faith, believe disclosure is appropriate to comply with the law (or a court order or subpoena); to prevent or investigate a possible crime, such as fraud or identity theft; to enforce or apply our Terms of Use and other agreements; to protect the rights, property or safety of KCF and/or its affiliates, our users or others; or to protect your vital interests.*

*Unsubscribing From Our Mailing List*

*If you subscribe to our mailing list, we will send you e-mail and other communications containing information or offers we think will interest you. You can choose not to receive future promotional e-mails or communications from the KCF family of brands by using one of the methods described in the next section of this Policy (Reviewing and Updating Your Information). In addition, you may "unsubscribe" from receiving future promotional e-mails by using the "opt-out" procedure described in the next e-mail you receive or use.*

*Reviewing and Updating Your Information*

*You can review, correct, update, or, in some cases, request the deletion of your personal information at any time in the following ways:*

- *Send an e-mail to webmaster@kilwinsfranchise.com, writing "Privacy Policy" in the subject line*
- *Write to us at: 1050 Bay View Road, Petoskey, Michigan 49770-9006.*
- *Click on "Member Profile" at www.kilwins.com Click on "Contact Us" on our Site.*

*If you access your "Member Profile," you will be able to review, correct or update your personal information yourself. You will also be able to "opt-in" or "opt-out" of our mailing list.*

*If you ask us to correct, update, or delete your personal information, you must give us enough information so that we can locate you in our databases. Although we will honor some requests to delete information, there are circumstances under which we will not do so.*

*Links to Other Site Operated by Third Parties*

*Our Site may have links to third-party websites that we do not control. This Policy applies only to personal information collected on and through our Site. It does not apply to personal information collected on third-party websites. If you access other websites through a link on this Site, please take a few minutes to review the terms of use and privacy statement posted on each website you visit.*

*Security*

*SSL Protection. When you log in or begin the checkout process within our Site, we require that a secure connection between your computer and our server be established. We use a technology called Secure Socket Layers (SSL), an encryption technology that works with most browsers. A secure connection is maintained until you leave the secure area of the Site. Although we use SSL encryption to safeguard the confidentiality of personal information as it travels over the Internet, "perfect security" does not exist on the Internet, and we can not guarantee the safety of transmitting personal information over the Internet.*

*Password Protection. Certain areas of our Site may be password protected. You are responsible for maintaining the confidentiality of your own passwords. We have the right to assume that anyone accessing our Site using a login name and a password assigned to you has the right to do so. You will be solely responsible for the activities of anyone accessing our Site using a password assigned to you, even if the individual is not, in fact authorized by you. You agree to notify us promptly at webmaster@kilwinsfranchise.com if you have reason to believe that your password may have been compromised or used without authorization.*

*Children*

*Our Site is not directed nor targeted to children under the age of 13. We do not use the Site to knowingly solicit data from or market to children under the age of 13. If you are under the age of 13, please do not provide us with any personal information. If we learn*

> *that someone under 13 has provided personally identifiable information to this Site, we will use reasonable efforts to remove that information from our databases.*

59)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

60)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

### Request for Jury Trial

61)     Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014

Telephone: 305-824-9800
Facsimile: 305-824-3868
Email: radamslaw@bellsouth.net
By:_____ /s/_____
RICHARD JOHN ADAMS, ESQ
FL BAR NO.: 770434